UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>STEPHANIE A. GALLAGHER<br>UNITED STATES MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7780<br>Fax (410) 962-1812 |

October 21, 2014

LETTER TO COUNSEL:

    RE:    *Jennifer Hawkins v. Commissioner, Social Security Administration*;
                Civil No. SAG-13-3774

Dear Counsel:

On December 13, 2013, the Plaintiff, Jennifer Hawkins, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). No hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions and remand the case to the Commissioner. This letter explains my rationale.

Ms. Hawkins protectively filed claims for Disability Insurance Benefits and Supplemental Security Income on June 28, 2010, alleging a disability onset date of June 21, 2010.[1] (Tr. 12). Her claims were denied initially and on reconsideration. (Tr. 99–104, 135–48). A hearing was held on August 22, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 33–72). Following the hearing, the ALJ determined that Ms. Hawkins was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 9–32). The Appeals Council denied Ms. Hawkins's request for review, (Tr. 1–6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Hawkins suffered from the following severe impairments: obesity, migraine headaches, severe hypochondriasis, major depressive disorder, generalized anxiety disorder with panic disorder, social phobia, and attention deficit hyperactivity disorder (ADHD). (Tr. 15). Despite these impairments, the ALJ determined that Ms. Hawkins retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. She can perform simple, routine and repetitive tasks with only occasional interaction with the general public and with co-workers.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that

---

[1] Ms. Hawkins's disability applications are not included in the administrative record.

Ms. Hawkins could perform jobs existing in significant numbers in the national economy, and that she was not therefore disabled. (Tr. 25–26).

Ms. Hawkins presents the following arguments on appeal: the ALJ erred in weighing the opinion evidence, in mischaracterizing certain medical evidence, and in assessing Ms. Hawkins's credibility; the ALJ did not detail the severity, frequency, and duration of the symptoms caused by Ms. Hawkins's migraine headaches and hypochondriasis in the RFC assessment; and the ALJ's hypothetical was defective because it did not contain all of Ms. Hawkins's specific limitations. While some of Ms. Hawkins's arguments are meritorious, I am remanding this case primarily because the ALJ did not conduct a proper assessment of Ms. Hawkins's fibromyalgia as required by Social Security Ruling 12-2p, discussed *infra*. In remanding, I express no opinion on whether the ALJ's ultimate conclusion that Ms. Hawkins is not entitled to benefits is correct or incorrect.

Ms. Hawkins first argues that the ALJ gave insufficient weight to the opinion of Dr. Edelstein, Ms. Hawkins's treating psychiatrist. Pl. Mot. 3. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."). In fact, if a physician's own notes provide insufficient or contradictory support for the physician's conclusions, an ALJ may properly assign less than controlling weight. *See Forsyth v. Astrue*, No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with his own progress notes); *Cramer v. Astrue*, No. 9:10-1872-SB-BM, 2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes").

Here, in his response to Ms. Hawkins's counsel's interrogatories, Dr. Edelstein opined that Ms. Hawkins had extreme restrictions in daily activities and in maintaining social relationships, frequent deficiencies in concentration or pace, and repeated episodes of decompensation. (Tr. 636–39). Yet, in his progress notes from June, 2011 to July, 2012, Dr. Edelstein's explanation of Ms. Hawkins's symptoms never amounted to the level of extreme or even marked, and he consistently found Ms. Hawkins's GAF score to be 60. (Tr. 533–47, 612–18). Moreover, Dr. Edelstein's progress notes from August 15, 2012 — the same day he completed the interrogatories — noted Ms. Hawkins's GAF score to be 59, (Tr. 59), which is largely inconsistent with the debilitating conditions Dr. Edelstein described in his interrogatories. While a GAF score is not determinative of disability, "it may inform an ALJ's judgment." *Kozel v. Astrue,* No. JKS–10–2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012). Dr. Edelstein also found that Ms. Hawkins's functional limitations had existed since 2010, but he had not begun treating her until June, 2011. (Tr. 636–39; 543, respectively).

In addition to being inconsistent with his own progress notes, Dr. Edelstein's opinion is inconsistent with the balance of the medical evidence. Dr. Edelstein's conclusion that Ms. Hawkins had extreme restrictions in daily activities contradicts Ms. Hawkins's own testimony that she helps with household chores like doing laundry, washing dishes, and preparing meals. (Tr. 49–50). Dr. Edelstein's conclusions also contradict the opinions of the state agency medical consultants, which are consistent with one another. (Tr. 73–84, 105–18). In Ms. Hawkins's initial disability evaluation in April, 2011, she was noted as having mild restrictions in daily activities, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 79). On reconsideration in August, 2011, the findings were virtually the same. (Tr. 112). Moreover, in contrast to Dr. Edelstein's opinion that "attempting to work would result in further worsening of [Ms. Hawkins's] already significant symptoms," Dr. Lake, a state agency medical consultant, explained: "The medical records show severe issues due to her anxiety issues and symptoms. Claimant would have limitations in being around the public and with co-workers. However, the claimant would still be able to perform simple routine work with limited interaction with others." (Tr. 612; 116, respectively). Given that Dr. Edelstein's opinion is inconsistent with his own progress notes and with the balance of the medical evidence, the ALJ properly gave it limited weight.

Ms. Hawkins also claims that the ALJ erroneously discounted the opinion of Ms. Williams, Ms. Hawkins's therapist. Pl. Mot. 4. The ALJ correctly noted that a therapist is not an "acceptable medical source" to establish evidence of a claimant's medical impairments. 20 C.F.R. §§ 404.1513(a); 416.913(a). Nonetheless, the ALJ considered Ms. Williams's opinion as an "other source" under 20 C.F.R. §§ 404.1513(d); 416.913(d), and found it warranted no weight because it was inconsistent with Ms. Williams's progress notes. In her response to Ms. Hawkins's counsel's interrogatories, Ms. Williams gave Ms. Hawkins a GAF score of 45 and noted her marked limitations. (Tr. 589–90). However, in her initial evaluation of Ms. Hawkins in April, 2011, Ms. Williams gave her a GAF score of 50, and her progress notes from April, 2011 to June, 2012 do not discuss any apparent increase or severity in Ms. Hawkins's symptoms. (Tr. 520–32). Ms. Williams's response was also internally inconsistent. At one point, Ms. Williams explained that she could not attest to Ms. Hawkins's degree of functional impairment before April, 2011, when her therapy began. (Tr. 592). But in other parts of her response, Ms. Williams noted Ms. Hawkins suffered from other functional impairments since June, 2010, which is when Ms. Hawkins applied for disability benefits. (Tr. 593–96; 12, respectively). Thus, I agree with the ALJ's consideration of this opinion evidence. Even if the ALJ gave Ms. Williams's opinion limited weight as opposed to no weight, it would still have little influence because Ms. Williams's undetailed progress notes are hardly supportive of the conclusory opinions she made in her interrogatories.

Although I find that the ALJ did not err in weighing this opinion evidence, the ALJ's insinuation of potential bias was inappropriate. That "the possibility always exists that a medical professional may express an opinion in an effort to assist a patient with whom he or she sympathizes," (Tr. 24), is not a factor the ALJ should consider unless a particular record contains evidence of actual bias. *See Hall v. Astrue*, No. 7:07CV590, 2008 WL 5455720, at *4 (W.D. Va.

*Jennifer Hawkins v. Commissioner, Social Security Administration*
Civil No. SAG-13-3774
October 21, 2014
Page 4

Dec. 31, 2008) (finding inappropriate the ALJ's suggestion of treating physicians' "inherent bias"). Notwithstanding this inapt statement, there is sufficient evidence in the record to support the ALJ's decision to give limited to no weight to the opinions of Dr. Edelstein and Ms. Williams.

Next, Ms. Hawkins claims that the ALJ mischaracterized some of the medical evidence. Pl. Mot. 4. I agree. Some of the ALJ's mischaracterizations are harmless; for example, noting Dr. Shapiro as a consultative examiner who only examined Ms. Hawkins once, when in fact there are records of several appointments with Dr. Shapiro. (Tr. 23; 598). The findings in Dr. Shapiro's records, however, do not support Ms. Hawkins's claims of debilitating conditions. *Id.* In fact, after a follow-up appointment with Ms. Hawkins in November, 2010, Dr. Shapiro wrote that Ms. Hawkins requested a 2-month excuse from work, after which Dr. Shapiro noted, "Long time. Not sure why she couldn't work." *Id.* Ms. Hawkins also points out that the ALJ repeatedly underscored the fact that Ms. Hawkins attended therapy sessions and doctors' appointments several times a week outside the home, yet ignored the fact that often her therapist would actually come to Ms. Hawkins's house for sessions. Pl. Mot. 4. However, the record shows that Ms. Hawkins attended therapy sessions many times at her therapist's office, as well as in her home. (Tr. 430–32, 522–28). In any event, evidence of therapy sessions only inside the home would have little influence on Ms. Hawkins's claims that she fears leaving the house, since she admitted to going to the doctor's office frequently, and to the store about once a week. (Tr. 50, 52–53).

However, I find that the ALJ erred in frequently emphasizing that a medical record from January, 2011 noted Ms. Hawkins as not having been on psychotropic medications since 2009. (Tr. 16, 20, 23). Not only does this mischaracterize the record, but there is ample medical evidence showing that Ms. Hawkins was, in fact, on psychotropic medications during this time period. (Tr. 306, 309, 321, 334, 337, 363, 367, 381). I also find the ALJ erred in concluding that Ms. Hawkins's medical record "indicates conservative medical treatment that has been generally effective in treating the claimant's symptoms." (Tr. 22). To the contrary, Ms. Hawkins's extensive medical record shows that she has been referred to many specialists, and has been largely unsuccessful with various medications due to their intolerable side effects. (Tr. 309, 422, 517, 548, 602; 322, 334, 451–52, 535, 539, 541, 612, 614, 619–20, 629, respectively). To describe Ms. Hawkins's medical treatment as "conservative" and "generally effective" is a clear mischaracterization of the medical record. I also find problematic the ALJ's statement that Ms. Hawkins has had limited treatment for her migraines. (Tr. 19). While the medical record documents only one appointment with a neurologist, Dr. Dave,[2] it also shows that Ms. Hawkins has been treated for migraine headaches by her primary care physician, Dr. Tam, and with no positive outcome. (Tr. 602–04; 442, 452, 557, respectively). These mischaracterizations should be corrected on remand.

Next, Ms. Hawkins argues that the ALJ erroneously evaluated her credibility. Pl. Mot. 7.

---

[2] Ms. Hawkins argued that the ALJ failed to consider the medical records from Dr. Dave, yet the ALJ cited to these records in her discussion of Ms. Hawkins's migraine treatment. (Pl. Mot. 4; Tr. 15).

*Jennifer Hawkins v. Commissioner, Social Security Administration*
Civil No. SAG-13-3774
October 21, 2014
Page 5

In this Circuit, it is well-established that an ALJ must follow a two-step process for assessing a claimant's assertions about her impairments and symptoms. *Craig*, 76 F.3d at 594–96. First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the alleged pain. *Id.* at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). Second, the ALJ must evaluate the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Id.* at 595. Ms. Hawkins contends that the ALJ erred in the second prong of the two-part test. I disagree that there was any error in evaluating Ms. Hawkins's symptoms caused by her mental impairments. The ALJ concluded that Ms. Hawkins's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 19). However, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible. *Id.* The ALJ reasoned that, despite Ms. Hawkins's complaints of disabling conditions due to anxiety and social phobia, the balance of the medical evidence showed only mild to moderate limitations. (Tr. 19–21). The ALJ also highlighted several of Ms. Hawkins's inconsistent statements. *Id.* For example, Ms. Hawkins testified that she fears leaving the house and avoids doing so, yet she frequently goes to doctors' appointments and goes to the store about once a week. (Tr. 50; 52–53). As for maintaining social relationships, Ms. Hawkins testified that she has lost friends, but her medical records indicate that she has no problems getting along with family, friends, neighbors, or others. (Tr. 52; 251). She also admitted to being close to her sister and mother. (Tr. 355). The ALJ also noted that while Ms. Hawkins claims she is unable to concentrate, her primary care physician routinely noted her as being attentive, cooperative, and alert. (Tr. 442–514). Given these inconsistencies, I find the ALJ properly assessed Ms. Hawkins's credibility and substantial evidence supports her credibility determination with regards to Ms. Hawkins's mental symptoms.

In contrast, the ALJ's discounting of Ms. Hawkins's credibility with regards to her physical symptoms caused by fibromyalgia was erroneous. The ALJ reasoned that Ms. Hawkins had only "occasional and minimal treatment for her allegedly debilitating fibromyalgia pain," and "she takes no medication that objectively or even subjectively support[s] this kind of pain." (Tr. 15). This Court has noted that fibromyalgia "poses particular challenges to credibility analyses due to the limited available objective medical evidence." *Gavigan v. Barnhart*, 261 F. Supp. 2d 334, 340 (D. Md. 2003). As the Seventh Circuit explained:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptoms that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Especially in Ms. Hawkins's case, where there is ample documentation of her frequent intolerable side effects to medication, (Tr. 322,

334, 451–52, 535, 539, 541, 612, 614, 619–20, 629), the ALJ should not draw inferences about inconsistent or minimal treatment. *See* SSR 96-7p, at *6. Rather, the fact that Ms. Hawkins's medical record documents her various attempts to find medications that work for her should support her allegations of pain. *See id.* ("Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trial of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms."). In light of the unique issues presented by a claim of fibromyalgia, the ALJ's evaluation of Ms. Hawkins's credibility required a more thorough assessment.

Although Ms. Hawkins did not specifically raise the issue, I find that the ALJ did not conduct a proper assessment of Ms. Hawkins's fibromyalgia pursuant to Social Security Ruling ("SSR") 12-2p. *See* SSR 12-2p. The Appeals Council failed to consider this Ruling as well. While Social Security Rulings do not carry the "force and effect of the law or regulations," *see Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984), they are nonetheless "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). Given that SSR 12-2p became effective July 25, 2012, both the ALJ's decision dated August 22, 2012, and the Appeals Council's denial dated November 13, 2013, should have considered this Ruling.

The stated purpose of SSR 12-2p is to "provide[] guidance on how [the agency] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM), and how [the agency] evaluate[s] FM in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act (Act)." SSR 12-2p, at *1. According to SSR 12-2p, a claimant can establish a medically determinable impairment of fibromyalgia if a physician has diagnosed fibromyalgia and the claimant satisfies certain diagnostic criteria.[3] *Id.* at *2. Once this has been established, the Commissioner will apply the five-step sequential evaluation to determine whether the claimant is disabled. *Id.* at *5; *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step One considers whether the claimant is engaged in substantial gainful activity. SSR 12-2p, at *6. Step Two requires the ALJ to determine whether the claimant's medically determinable impairment is "severe" or "not severe." *Id.* Because fibromyalgia is not a listed impairment, at Step Three of the sequential evaluation, the ALJ must determine whether the claimant's fibromyalgia meets another listing, independently or in combination with another impairment. *Id.* As part of the sequential evaluation, the ALJ will also assess the claimant's RFC. *Id.*; *see also* 20 C.F.R. §§ 404.1520(e); 416.920(e). In making the RFC assessment, the ALJ "will consider a longitudinal record whenever possible because the symptoms of FM [fibromyalgia] can wax and wane so that a

---

[3] SSR 12-2p uses two sets of criteria for diagnosing fibromyalgia—the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia, and the 2010 ACR Preliminary Diagnostic Criteria. SSR 12-2p, at *2–3. Both sets of the criteria generally require that the claimant demonstrate: (1) a history of widespread pain; (2) tender points or other manifestations of fibromyalgia symptoms; and (3) evidence that other disorders, which could cause the symptoms have been ruled out. *Id.*

*Jennifer Hawkins v. Commissioner, Social Security Administration*
Civil No. SAG-13-3774
October 21, 2014
Page 7

person may have 'bad days and good days.'" SSR 12-2p, at *6. At Steps Four and Five of the sequential evaluation, the ALJ will consider the claimant's symptoms, such as widespread pain and fatigue, in determining whether exertional limitations, non-exertional physical or mental limitations, or environmental restrictions are warranted. *Id.*

Here, at Step Two of the sequential evaluation, the ALJ found Ms. Hawkins's fibromyalgia to be a non-severe impairment. (Tr. 15). I find that this determination is not supported by substantial evidence. The ALJ found persuasive the fact that Ms. Hawkins was no longer on Lyrica or Savella, which are medications commonly used to treat fibromyalgia. *Id.* However, the ALJ failed to note that Ms. Hawkins's medical records consistently document her adverse reaction to Lyrica. (Tr. 442, 446, 451, 548, 550, 563, 602, 619). Moreover, Ms. Hawkins's medical records show that one of her pain specialists, Dr. Pappas, only suggested a possible trial of Savella, but directed Ms. Hawkins to continue taking Cymbalta.[4] (Tr. 549). There is no indication in the record that Ms. Hawkins began and stopped taking Savella. Furthermore, the ALJ's notation that Ms. Hawkins was "ultimately placed on Ibuprofen" is unsupported by the medical record; the ALJ's citation to the record does not support this statement, and elsewhere in the record, Ms. Hawkins was noted as using Ibuprofen intermittently, and primarily for migraine relief. (Tr. 335, 444–45, 488–89, 619). Thus, the ALJ's reasoning that Ms. Hawkins's fibromyalgia is not severe because she does not take the commonly used medications to treat fibromyalgia, and rather only takes Ibuprofen, is both faulty and unsupported.

The ALJ also erred by failing to discuss Ms. Hawkins's fibromyalgia in her RFC assessment. Even assuming Ms. Hawkins's fibromyalgia is a non-severe impairment, the ALJ must still go through all steps set forth in SSR 12-2p. *See* SSR 12-2p, at *6 ("We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are 'not severe.'"); *see also* 20 C.F.R. § 404.1545(2). It is true that, because the ALJ found Ms. Hawkins's other impairments to be severe, her error at Step Two would have been harmless had she engaged in an adequate RFC assessment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). However, because the ALJ's RFC assessment did not discuss Ms. Hawkins's fibromyalgia pursuant to SSR 12-2p, both errors make remand appropriate.

I also find that an adequate RFC assessment, and thus an updated hypothetical, will effectively address Ms. Hawkins's argument that the ALJ's hypothetical did not include all of Ms. Hawkins's limitations. Ms. Hawkins's remaining argument — that the ALJ failed to detail in her RFC assessment the severity, frequency, and duration of the symptoms caused by Ms. Hawkins's migraines and hypochondriasis — is unpersuasive; the ALJ noted that Ms. Hawkins suffered from migraine headaches at least three times a week, and each migraine lasted a few hours, (Tr. 19), and hypochondriasis is not an impairment for which severity, frequency, and

---

[4] Ms. Hawkins argued that the ALJ failed to consider the medical records from Dr. Pappas, yet the ALJ cited to these records in her discussion of Ms. Hawkins's fibromyalgia. (Pl. Mot. 4; Tr. 15). The ALJ did not, however, discuss medical records from Dr. Zuckerman, also a pain specialist, but should have done so. *See* SSR 12-2p, at *6; 20 C.F.R. § 404.1545(3).

*Jennifer Hawkins v. Commissioner, Social Security Administration*
Civil No. SAG-13-3774
October 21, 2014
Page 8

duration can be accurately quantified.

  For the reasons set forth herein, both parties' motions for summary judgment (ECF Nos. 14, 16) will be DENIED. The opinion of the Administrative Law Judge is VACATED and the case is REMANDED to the Commissioner for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

  Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

            Sincerely yours,

              /s/

            Stephanie A. Gallagher
            United States Magistrate Judge